**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 22-cv-2112**

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
JAMES MICHAEL JONES

   Plaintiffs,

v.

CITY OF BOULDER, COLORADO

   Defendant.

---

## COMPLAINT

---

  Plaintiff submits the following Complaint against Defendant City of Boulder, Colorado (the "City").

## I. PARTIES

1. Plaintiff RMGO is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). RMGO seeks to defend the right of all law-abiding individuals to keep and bear arms. RMGO has members who reside within the City. RMGO represents the interests of its members who reside in the City. Specifically, RMGO represents the interests of those who are affected by the City's prohibition of commonly used firearms and magazines. In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution and to continue to lawfully possess and/or transfer property that they lawfully obtained. But for the City's unlawful prohibition of

1

commonly used arms and their reasonable fear of prosecution for violating these prohibitions, RMGO members would seek to acquire, keep, possess and/or transfer lawful arms for self-defense and other lawful purposes. For purposes of this Complaint, the term "Plaintiffs" is meant to include RMGO in its capacity as a representative of its members.

2.      Plaintiff NAGR is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside within the City. NAGR represents the interests of its members who reside in the City. Specifically, NAGR represents the interests of those who are affected by the City's prohibition of commonly used firearms and magazines. In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution and to continue to lawfully possess and/or transfer property that they lawfully obtained. But for the City's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, NAGR members would seek to acquire, keep, possess and/or transfer lawful arms for self-defense and other lawful purposes. For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

3.      Plaintiff James Michael Jones is a resident of the City and a law-abiding citizen of the United States. He currently owns certain semi-automatic firearms that are putatively made illegal by the Code (defined below), and he currently owns magazines capable of holding more than 10 rounds of ammunition. He has possessed this property lawfully for years. He seeks to continue possessing his lawfully owned property, acquire additional arms putatively made illegal by the Code, and lawfully transfer his property to others. But for the City's restrictions

2

on commonly used arms, and his reasonable fear of criminal prosecution for violating these restrictions, he would continue to possess his lawfully owned arms, acquire additional arms, and/or transfer them to others.

4.     Defendant City of Boulder, Colorado is a Colorado home rule municipal corporation with an address of 1777 Broadway, Boulder, Colorado 80302.

5.     Defendant is or will enforce the unconstitutional provisions of the Code against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

### III.  JURISDICTION AND VENUE

6.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States.  The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

7.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

8.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### IV.  GENERAL ALLEGATIONS

9.     The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed."  U.S. CONST. amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010)

("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305

(U.S. June 23, 2022) ("*Bruen*").

10.     The right to keep and bear arms recognized in the Second Amendment is made

applicable to the states by the Fourteenth Amendment.  *McDonald, supra*.

11.     This action challenges the constitutionality of certain provisions of the Boulder City

Code (the "Code").  A copy of the relevant provisions of the Code is attached hereto as

Exhibit A.

12.     Section 5-8-2 of the Code defines the term "assault weapon."  Section 5-8-2 states that

the term "illegal weapon" includes any "assault weapon."  Section 5-8-10(a) of the Code makes

it illegal to possess, sell or otherwise transfer any "illegal weapon" in the City.

13.     The term "assault weapon" as used in the Code is not a technical term used in the

firearms industry or community for firearms commonly available to civilians.  Instead, the term

is a rhetorically charged political term meant to stir the emotions of the public against those

persons who choose to exercise their constitutional right to possess certain semi-automatic

firearms that are commonly owned by millions of law-abiding American citizens for lawful

purposes.  Plaintiffs refuse to adopt the City's politically charged rhetoric in this Complaint.

Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same

meaning as the term "assault weapon" in section 5-88-2 of the Code.

14.     Section 5-8-28 of the Code provides an exception to the general illegality of Banned

Firearms in the City.  Under that section, a person who legally possessed a Banned Firearm on

July 1, 2022, may apply to the Boulder Police Department for a certificate.  If the Boulder

Police Department issues a certificate to a person and the person is later prosecuted for

possession of a Banned Firearm, he may assert as a defense the fact that he has a certificate.  No

person in the City (including persons who have obtained a certificate) may acquire Banned Firearms or transfer a grandfathered Banned Firearm in the City, including to members of his own family.  Any person who inherits a Banned Firearm must destroy it or remove it from the City.

15.     Plaintiffs and/or their members currently own and possess Banned Firearms.  Plaintiffs and/or their members desire to continue to possess the Banned Firearms in the City.  Moreover, they wish to acquire more Banned Firearms, transfer their currently owned Banned Firearms to other persons in the City, and bequeath their Banned Firearms to their devisees.

16.     The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes.  *Heller*, *supra*, at 627.  This issue was addressed with respect to semi-automatic weapons such as the Banned Firearms made illegal in the Code and currently possessed by Plaintiffs in *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), abrogated by *Bruen*, *supra*.  In his dissent (which, after *Bruen*, likely represents the correct interpretation of the law), Judge Traxler stated:

> It is beyond any reasonable dispute from the record before us that a statistically significant number of American citizens possess semiautomatic rifles (and magazines holding more than 10 rounds) for lawful purposes.  Between 1990 and 2012, more than 8 million AR- and AK- platform semiautomatic rifles alone were manufactured in or imported into the United States.  In 2012, semiautomatic sporting rifles accounted for twenty percent of all retail firearms sales.  In fact, in 2012, the number of AR- and AK- style weapons manufactured and imported into the United States was more than double the number of the most commonly sold vehicle in the U.S., the Ford F-150.  In terms of absolute numbers, these statistics lead to the unavoidable conclusion that popular semiautomatic rifles such as the AR-15 are commonly possessed by American citizens for lawful purposes within the meaning of *Heller*.

*Id*., 849 F.3d at 153, Traxler, J. dissenting (internal citations and quotation marks omitted).

17.     Millions of law-abiding citizens own and use for lawful purposes semi-automatic firearms such as the Banned Firearms currently possessed by Plaintiffs.  The Code's prohibition on the possession, sale, or other transfer of the Banned Firearms possessed by Plaintiffs and/or their members violates the Second Amendment.  Moreover, the Code's prohibition on carrying even Banned Firearms legally owned prior to July 1, 2022 violates the Second Amendment as elucidated in *Bruen*.

18.     Section 5-8-2 of the Code defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition.  Section 5-8-2 states that the term "illegal weapon" includes any "large-capacity magazine."  Section 5-8-10 of the Code makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

19.     The Code again uses politically charged rhetoric to describe the arms it bans.  The Code's characterization of these magazines as "large capacity" is a misnomer.  Magazines capable of holding more than 10 rounds are standard capacity magazines.  Plaintiffs refuse to adopt the City's politically charged rhetoric in this Complaint.  Therefore, for purposes of this Complaint, the term "Banned Magazine" shall have the same meaning as the term "large-capacity magazine" in section 5-8-2of the Code.

20.     In his dissent in *Kolbe v. Hogan*, Judge Traxler also addressed magazines such as the Banned Magazines.  He stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States.  These magazines are so common that they are standard on many firearms: On a nationwide basis most pistols are manufactured with magazines holding ten to 17 rounds.  Even more than 20 years ago, fully 18 percent of all firearms owned by civilians were equipped with magazines holding more than ten rounds."

*Id*., 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

21.     Law-abiding citizens own literally tens of millions of Banned Magazines such as those owned and possessed by Plaintiffs and/or their members.  The Code's prohibition on the possession, sale, or other transfer of the Banned Magazines owned by Plaintiffs and/or their members violates the Second Amendment.

22.     On July 22, 2022, this Court entered an order in *Rocky Mountain Gun Owners v. The Town of Superior*, Case No. 22-cv-1685, in which it restrained enforcement of certain provisions of a Town of Superior, Colorado ordinance (the "Superior Order").

23.     In the Superior Order, this Court held there was a strong likely that the plaintiffs in that case would prevail on the merits of their constitutional challenge to the Superior ordinance provisions banning so-called assault weapons and large capacity magazines.  Those restrained ordinance provisions are substantially identical to the ordinance provisions challenged in this action.

24.     There is an actual and present controversy between the parties.  The Code infringes on Plaintiffs' right to keep and bear arms under the Second Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes.  Defendant denies these contentions.  Plaintiffs desire a judicial declaration that the Code sections identified above, facially and/or as applied to them, violate their constitutional rights.  Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights.  This is true even if certain provisions of the Code provide affirmative defenses to criminal prosecution.  The risk of criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

7

25.     Plaintiffs are or will be injured by Defendant's enforcement of the Code sections
identified above insofar as those provisions violate Plaintiffs' rights under the Second
Amendment by precluding the acquisition, possession, transfer and use of arms that are
"typically possessed by law-abiding citizens for lawful purposes" nationwide.  If not enjoined
by this Court, Defendant will enforce the Code in derogation of Plaintiffs' constitutional rights.
Plaintiffs have no plain, speedy, and adequate remedy at law.  Damages are indeterminate or
unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs
because they are unable to engage in constitutionally protected activity due to Defendant's
present or contemplated enforcement of these provisions.

### V. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

26.     Paragraphs 1-25 are realleged and incorporated by reference.

27.     The Code's definition of "illegal weapon" includes many firearms and firearms
magazines that are "typically possessed by law-abiding citizens for lawful purposes"
nationwide.  The Code, therefore, generally prohibits residents of the City, including Plaintiffs,
from acquiring, keeping, possessing, and/or transferring arms protected by the Second
Amendment.  There are significant penalties for violations of the Code.

28.     These restrictions infringe on the right of the people of the City, including Plaintiffs, to
keep and bear arms as guaranteed by the Second Amendment and made applicable to Colorado
and its political subdivisions by the Fourteenth Amendment.

29.     The Code's prohibitions extend into Plaintiffs' homes, where Second Amendment
protections are at their zenith.

30.     Defendant cannot satisfy its burden of justifying these restrictions on the Second

Amendment right of the People, including Plaintiffs, to bear, acquire, keep, possess, transfer,

and use arms that are in common use by law-abiding adults throughout the United States for the

core right of self-defense in the home and other lawful purposes.

## VI.  PRAYER FOR RELIEF

Plaintiffs pray that the Court:

31.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Code sections

identified herein are unconstitutional on their face or as applied to the extent their prohibitions

apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in

common use by the American public for lawful purposes;

32.     Enter preliminary and permanent injunctive relief enjoining Defendant and its officers,

agents, and employees from enforcing the unconstitutional Code sections identified above;

33.     Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees,

costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

34.     Grant any such other and further relief as the Court may deem proper.

Respectfully submitted this 18th day of August, 2022.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
Voice:  (303) 205-7870; Fax:  (303) 463-0410
Email:  barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033

9

Phone Number:  (303) 991-7600
Fax Number:  (303) 991-7601
E-mail:  shaun@pearmanlawfirm.com

*Attorneys for Plaintiffs*

Plaintiffs' Addresses:
National Association for Gun Rights
Rocky Mountain Gun Owners
2300 West Eisenhower Boulevard
Loveland, Colorado 80537

James Michael Jones
c/o plaintiff's counsel

Chapter 8 - Weapons

# EXHIBIT A

> *Footnotes:*
>
> --- *(17)* ---
>
> Adopted by Ordinance No. 4654. Amended by Ordinance No. 7115. Derived from Ordinance Nos. 1734, 3316, 3459, 3681, 3760.

5-8-1. - Legislative Intent.

The purpose of this chapter is to protect the public health, safety, and welfare by regulating the possession, storage, and use of weapons.

Ordinance No. 7299 (2003)

5-8-2. - Definitions.

The following terms used in this chapter have the following meanings unless the context clearly requires otherwise:

*About the person* means sufficiently close to the person to be readily accessible for immediate use. [2]

*Assault weapon* means:

(a) All semi-automatic center-fire rifles that have the capacity to accept a detachable magazine and that have any of the following characteristics:

    (1) A pistol grip or thumbhole stock;

    (2) A folding or telescoping stock;

    (3) A flash suppressor; or

    (4) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearms with the non-trigger hand without being burned, but excluding a slide that encloses the barrel.

(b) All semi-automatic center-fire pistols that have any of the following characteristics:

    (1) A threaded barrel;

    (2) A secondary protruding grip or other device to allow the weapon to be stabilized with the non-trigger hand;

    (3) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

    (4) A flash suppressor;

    (5) The capacity to accept a detachable ammunition feeding device at some location outside of the pistol grip;

    (6) A manufactured weight of fifty ounces or more when unloaded;

    (7) A buffer tube, arm brace, or other part that protrudes horizontally under the pistol grip; or

    (8) A fixed magazine that has the capacity to accept more than ten rounds.

(c) All semi-automatic shotguns that have any of the following characteristics:

      (1)   A pistol grip or thumbhole stock;

      (2)   A folding or telescoping stock;

      (3)   A fixed magazine capacity in excess of five rounds; or

      (4)   The capacity to accept a detachable magazine.

    (d)   Any firearm which has been modified to be operable as an assault weapon as defined herein.

    (e)   Any part or combination of parts designed or intended to convert a firearm into an assault weapon, including any combination of parts from which an assault weapon may be readily assembled if those parts are in the possession or under the control of the same person.

*Constructive knowledge* means knowledge of facts or circumstances sufficient to cause a reasonable person to be aware of the fact in question.

*Federal licensee* means a federally licensed firearms manufacturer, importer, or dealer licensed under 18 U.S.C. 923(a), or other federal licensee authorized to identify firearms with serial numbers.

*Frame* or *receiver* means the part of a firearm that, when the complete weapon is assembled, is visible from the exterior and provides the housing or structure designed to hold or integrate one or more fire control components, even if pins or other attachments are required to connect those components to the housing or structure. For models of firearms in which multiple parts provide such housing or structure, the part or the parts that the Director of the Federal Bureau of Alcohol, Tobacco, Firearms & Explosives has determined are a frame or receiver constitute the frame or receiver. For the purposes of this definition, the term "fire control component" means a component necessary for the firearm to initiate, complete, or continue the firing sequence, and includes a hammer, bolt, bolt carrier, breechblock, cylinder, trigger mechanism, firing pin, striker, or slide rails.

*Illegal weapon* means an assault weapon, large-capacity magazine, rapid-fire trigger activator, blackjack, gas gun, metallic knuckles, gravity knife or switchblade knife.

*Large-capacity magazine* means any ammunition feeding device with the capacity to accept more than ten rounds, but shall not be construed to include any of the following:

    (a)   A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds.

    (b)   A 22-caliber tube rim-fire ammunition feeding device.

    (c)   A tubular magazine that is contained in a lever-action firearm.

*Law enforcement officer* means any person employed by the United States, or a state, county, city, municipality, village, town, or other political subdivision as a police officer, peace officer, or in some like position involving the enforcement of the law and protection of the public interest.

*Licensed firearms dealer* means any person who is a licensed importer, licensed manufacturer, or dealer licensed pursuant to 18 U.S.C. sec. 923, as amended, as a federally licensed firearms dealer and has obtained all necessary state and local licenses to sell firearms in the state.

*Locked container* means a secure container which is enclosed on all sides and locked by a padlock, key lock, combination lock, or similar device, but does not include the utility compartment, glove compartment, or trunk of a motor vehicle.

*Minor* means a person under twenty-one years of age.

*Pistol grip* means a grip that protrudes conspicuously beneath the action of the weapon and that allows for a pistol style grasp in which the web of the trigger hand (between the thumb and index finger) can be placed below the top of the exposed portion of the trigger while firing.

*Provide* means to give, lend, sell, or to place in an unsecured location where a minor, an unauthorized person or an incompetent person could foreseeably gain access to a firearm.

*Rapid-fire trigger activator* means:

(a)  A device that attaches to a firearm to allow the firearm to discharge two or more shots in a burst when the device is activated; or

(b)  A manual or power-driven trigger-activating device that, when attached to a firearm, increases the rate of fire of that firearm.

*Sale* means the actual approval of the delivery of a firearm in consideration of payment or promise of payment.

*Semi-automatic* means a firearm that fires a single round for each pull of the trigger and automatically chambers a new round immediately after a round is fired.

*Site* means the facility or location where a sale and/or transfer of firearms is conducted.

*Transfer* means the intended delivery of a firearm from a dealer to another person without consideration of payment or promise of payment including, but not limited to, gifts and loans. "Transfer" does not include the delivery of a firearm owned or leased by an entity licensed or qualified to do business in Colorado to, or return of such firearm by, any of that entity's employees or agents for lawful purposes in the ordinary course of business.

*Unfinished frame or receiver* means any forging, casting, printing, extrusion, machined body or similar article that:

(a)  Has reached a stage in manufacture where it may readily be completed, assembled or converted to be used as the frame or receiver of a functional firearm; or

(b)  Is marketed or sold to the public to become or be used as the frame or receiver of a functional firearm once completed, assembled or converted.

For the purposes of this definition, the term "assemble" means to fit together component parts. In determining whether a forging, casting, printing, extrusion, machined body, or similar article may be readily completed, assembled, or converted to a functional state, the city manager may consider any available instructions, guides, templates, jigs, equipment, tools, or marketing materials.

Ordinance Nos. 8245 (2018) ; 8494 (2022); 8526 (2022); 8528 (2022); 8529 (2022)

[2] People in the interest of RJA , 556 P.2d 491 (Colo. App. 1976).

5-8-3. - Discharge of Firearms.

No person shall discharge any projectile from a firearm or gas or mechanically operated gun. For purposes of this section, any person who was the proximate cause of the discharge shall be deemed to have discharged the firearm or gun. It is a violation of this section if the discharge occurs within the jurisdiction of the city, or if the projectile travels over such jurisdiction.

Ordinance No. 5497 (1992)

5-8-4. - Possessing and Discharging Firearm or Bow in Park or Open Space.

    (a)  No person shall possess any firearm or gas or mechanically operated gun in any park or open space.

    (b)  No person shall discharge a missile from, into, or over or possess any bow, slingshot, or crossbow in any park or open space.

Ordinance No. 5497 (1992)


5-8-5. - Negligently Shooting Bow or Slingshot.

No person shall shoot a bow and arrow, crossbow, or slingshot in a negligent manner.


5-8-6. - Aiming Weapon at Another.

No person shall knowingly aim a loaded or unloaded firearm or gas or mechanically operated gun at another person.


5-8-7. - Flourishing Deadly Weapon in Alarming Manner.

No person shall display or flourish a deadly weapon in a manner calculated to alarm another person.


5-8-8. - Possession of Loaded Firearms.

    (a)  Except as set forth in this chapter, no person shall possess a loaded firearm or a loaded gas or mechanically operated gun.

    (b)  For the purposes of this section, a firearm is loaded if there is a projectile, with charge, [1] in the chamber, in the cylinder, or in the clip in the firearm.

    (c)  A peace officer shall not undertake an arrest under this section without first giving due consideration to the city's burden of proof with regard to the affirmative defenses set forth in Section 5-8-22, "Defenses," B.R.C. 1981.

[1] See Chapter 10-8, "Fire Code," B.R.C. 1981, prohibiting discharge of fireworks.


5-8-9. - Carrying a Concealed Weapon.

No person shall have a knife or firearm concealed on or about such person's body.


5-8-10. - Possession and Sale of Illegal Weapons.

    (a)  No person shall knowingly possess or sell or otherwise transfer an illegal weapon.

    (b)  Nothing in this section shall be construed to forbid any person:

        (1)  Holding a Federal Firearms License issued by the United States Government from possession of any firearm authorized pursuant to such license;

        (2)  From possessing a firearm for which the United States Government has issued a stamp or permit pursuant to the National Firearms Act; or

        (3)  Selling an illegal weapon to a person identified in Section 5-8-25, "Exemptions from this Chapter," B.R.C. 1981.

    (c)  Nothing in this section shall be deemed to apply to any firearm that has been modified either to render it

permanently inoperable or to permanently make it not an assault weapon.

(d) Nothing in this section shall be deemed to restrict a person's ability to travel with a firearm in a private motor vehicle or other private means of conveyance for lawful hunting, for lawful competition, or for lawful protection of a person or another person or property while traveling into, though, or within, the City of Boulder, regardless of the number of times the person stops in the City of Boulder.

Ordinance Nos. 8245 (2018) ; 8259 (2018); 8494 (2022)

5-8-11. - Possessing Firearm While Intoxicated.

No person shall possess a firearm while such person's ability is impaired by intoxicating liquor, as defined by state law, [1] or a controlled substance, as defined by state law. [2]

[1] § 42-4-1301, C.R.S.

[2] § 12-22-303(7), C.R.S.

5-8-12. - Providing Firearm to Intoxicated Persons or Minors.

No person shall provide any firearm to any person whose ability is impaired by intoxicating liquor, as defined by state law, [1] or any controlled substance, as defined by state law; [2] or to any person in a condition of agitation and excitability; or to any minor unless the person providing the firearm has obtained the consent of the minor's parent or legal guardian. Knowledge of the minor's age shall not be an element of this offense.

[1] § 42-4-1202(b), C.R.S.

[2] § 12-22-303(7), C.R.S.

5-8-13. - False Information on Weapons Application.

Repealed.

Ordinance No. 7299 (2003)

5-8-14. - Setting Spring Gun.

No person shall knowingly set a loaded gun, trap or device designed to cause an explosion upon being tripped or approached and leave it unattended by a competent person immediately present.

5-8-15. - Prohibition on Possession of Firearms in Sensitive Areas.

(a) No person shall knowingly carry any firearm, whether in an open or concealed manner, in any of the following locations:

(1) Any building or real property owned or operated by the City of Boulder, or an entity created or controlled by the City of Boulder, except for city rights-of-way.

(2) The portion of any building that is being used for governmental purposes by the City of Boulder or an entity created or controlled by the City of Boulder.

(3) Any public parks, playgrounds, or open space.

(4)  Any recreation or community center facility owned, operated, or managed by the City of Boulder.

(5)  At any demonstration as described in this section held on public property.

(6)  Within five hundred feet of any polling location within the City of Boulder on the day of an election or at a place officially designated by the Boulder County Clerk and Recorder for the counting of ballots on any day when ballots are being counted or conducting activities related to a federal, state, or municipal election.

(7)  The area of any facility licensed to serve alcohol pursuant to Title 44, Article 3, Colorado Revised Statues.

(b)  No person shall knowingly carry any firearm, whether in an open or concealed matter, in any of the following locations without explicit permission of the operating authority:

(1)  A hospital.

(2)  A facility or office that has medical, mental health, or substance abuse professionals to provide screening, evaluation, or treatment for mental health or substance abuse disorders.

(3)  Any property or facility owned or operated by a church, synagogue, mosque, temple, or other place of worship.

(4)  A stadium or arena.

(5)  A courthouse.

(6)  A depository financial institution or a subsidiary or affiliate of a depository financial institution.

(7)  A theater.

(8)  A day care center or preschool.

(9)  A grocery store.

(c)  Notice of the prohibitions on the concealed and open carry of firearms shall be posted conspicuously at all public entrances to the locations identified in subsections (a) and (b) as required by C.R.S. 29-11.7-104 and C.R.S. 18-12-214(c)(2).

(1)  No later than sixty days after the enactment of this ordinance, the City of Boulder shall make compliant signs available for download on a publicly accessible website in English and Spanish.

(2)  No person shall be determined to violate this section if signs are not posted as required by this subsection.

(d)  The provisions of this section do not apply to:

(1)  Any federal, state, or local law enforcement officer when engaged in official duties.

(2)  Any member of the United States Armed Forces or Colorado National Guard when engaged in official duties.

(3)  Private security guards acting in the course of their duties.

(4)  The carrying or possession of a firearm in a private motor vehicle in a trunk or locked container.

(e)  As used in this section:

(1)  *Demonstration"* means demonstrating, picketing, speechmaking or marching, holding of vigils and all other like forms of conduct occurring in a public place which involve the communication or expression of views or grievances engaged in by one or more persons, the conduct of which has the effect, intent or propensity to draw a crowd or onlookers. Such term shall not include casual use of property by visitors or tourists which does not have an intent or propensity to attract a crowd or onlookers.

(2)  *"Firearm"* has the same meaning as set forth in 18 U.S.C. Sec. 921(a)(3), as amended.

(f) Anyone violating the provisions of this subsection shall be subject to immediate removal from the premises in add any other penalty provided by law.

Ordinance No. 8525 (2022)

**Editor's note—** Ord. No. 8525 , § 1, effective July 7, 2022, repealed the former § 5-8-15, and enacted a new § 5-8-15 as set out herein. The former § 5-8-15 pertained to deadly weapons in city buildings prohibited and derived from Ordinance No. 7299 (2003).

5-8-16. - Possession of Firearm by Minor Prohibited.

(a) No minor shall knowingly possess a firearm.

(b) This section does not apply to a second or subsequent offense by the minor if the firearm in both instances was a handgun, or if the possession is otherwise a felony under state law.

(c) It is a specific defense to a charge of violating this section that the minor was, with the consent of his or her parent or legal guardian:

(1) In attendance at a hunter's safety course or a firearms safety course;

(2) Engaging in practice in the use of a firearm or target shooting in an area designated as a target range by the city manager under Section 5-8-26, "City Manager May Designate Target Ranges," B.R.C. 1981, for the type of weapon involved;

(3) Engaging in an organized competition involving the use of a firearm or participating in or practicing for a performance by an organized group exempt from payment of income tax under 26 U.S.C. §501(c)(3) as determined by the federal internal revenue service which uses firearms as a part of such performance;

(4) Hunting or trapping pursuant to a valid license issued to such person pursuant to article 4 of title 33, C.R.S.;

(5) Traveling with an unloaded firearm in such minor's possession to or from any activity described in Paragraph (c)(1), (c)(2), (c)(3) or (c)(4) of this section or to or from an established range authorized by the governing body of the jurisdiction in which such range is located or any other area outside the city where target practice is legal and the minor has permission from the landowner for such practice;

(6) Possessing a firearm at such minor's residence for the purpose of exercising the rights contained in § 18-1-704 or 18-1-704.5, C.R.S.; and

(7) For the purposes of Paragraph (c)(5) of this section, a firearm is *loaded* if:

(A) There is a cartridge in the chamber or cylinder of the firearm or in a clip in the firearm; or

(B) The firearm, and the ammunition for such firearm, is carried on the person of the minor or is in such close proximity to the minor that the minor could readily gain access to the firearm and the ammunition and load the firearm.

*Footnotes:*

*--- (18) ---*

*Second offense handgun possession by a minor is a felony under § 18-12-108.5, C.R.S.*

5-8-17. - Providing Rifle or Shotgun to Minor Prohibited.

(a) No person shall provide a rifle or shotgun with or without remuneration to any minor under circumstances which cause the minor to be in violation of Section 5-8-16, "Possession of Firearm by Minor Prohibited," B.R.C.

1981. Knowledge of the minor's age shall not be an element of this offense.

(b) No parent or legal guardian of a minor shall provide a rifle or shotgun to the minor for any purpose or shall permit the minor to possess a rifle or shotgun for any purpose if the parent or guardian has actual or constructive knowledge of a substantial risk that the minor will use the rifle or shotgun to violate a federal, state or local law.

(c) No parent or legal guardian of a minor shall provide a rifle or shotgun to, or permit the minor to possess a rifle or shotgun, for any purpose, if the minor has been convicted of a crime of violence, as defined in § 16-11-309, C.R.S., or if the minor has been adjudicated a juvenile delinquent for an act which would have constituted a crime of violence, as so defined, if committed by an adult.

(d) It is a specific defense to a charge of violating this section by providing a firearm that had been stolen from the defendant either by the minor or by another person who subsequently provided the firearm to the minor.

*Footnotes:*

*--- (19) ---*

*The acts prohibited in this section, if they involve a handgun, are felonies under § 18-12-108.7, C.R.S.*

## 5-8-18. - Unlawful Storage of Assault Weapons.

(a) No person shall store, control or possess any assault weapon within any premises of which that person has an ownership interest, custody or control, in such a manner that the person knows, or has constructive knowledge, that a minor is likely to gain possession of the assault weapon and in fact does obtain possession of the assault weapon.

(b) It is a specific defense to a charge or violation of this section that:

(1) The assault weapon was located within a room or closet from which all minors were excluded by locks; or

(2) The assault weapon was stored in a locked container.

(c) It is an affirmative defense to civil negligence liability that the assault weapon was stored in a locked container.

## 5-8-19. - Unlawful Storage of Firearms Where There is Personal Injury.

(a) No person shall store, control or possess any firearm within any premises of which that person has an ownership interest, custody or control, in such manner that the person knows, or has constructive knowledge, that a minor is likely to gain possession of the firearm and in fact does obtain control of the firearm and either injures or kills himself or herself or another person with the firearm or uses the firearm in violation of federal, state or local law.

(b) It is a specific defense to a charge of violation of this section that:

(1) The firearm was located within a room or closet from which all minors were excluded by locks; or

(2) The firearm was stored in a locked container.

(c) It is an affirmative defense to civil negligence liability that the firearm was stored in a locked container.

(d) It is an affirmative defense that the firearm was used by a minor at such minor's residence with the permission of the minor's parent or legal guardian, for the purpose of exercising the rights contained in § 18-1-704 or 18-1-704.5, C.R.S.

## 5-8-20. - Parent or Legal Guardian Liability for Illegal Possession of Firearms by a Minor.

(a)  No parent or legal guardian, having actual or constructive knowledge of illegal possession of a firearm by a minor shall fail to either:

   (1)  Immediately take possession of the firearm; or

   (2)  Immediately notify law enforcement authorities of the details of the illegal possession so that law enforcement authorities can act to take possession of the firearm.

(b)  This section does not create a duty on a parent or legal guardian to search the bedroom of a minor for firearms.

(c)  As used in this section, illegal possession of a firearm by a minor means possession in violation of Section 5-8-16, "Possession of Firearm by Minor Prohibited," B.R.C. 1981, or any provision of state or federal law concerning possession of a firearm by a minor.

5-8-21. - Prohibition on Openly Carrying Firearms.

(a)  No person shall knowingly openly carry a firearm on or about their person in a public place.

(b)  This section shall not apply to:

   (1)  Any federal, state, or local law enforcement officer when engaged in official duties.

   (2)  Any member of the United States Armed Forces or Colorado National Guard when engaged in official duties.

   (3)  A person carrying a firearm when engaged in target shooting or when engaged in lawful hunting activity.

   (4)  The carrying of a firearm on a person's own property, business, or dwelling or on the property of another with permission from the property owner.

   (5)  The carrying of a firearm in a private motor vehicle or other private means of conveyance while traveling in, into or through the city, as permitted by § 18-12-105.6, C.R.S.

   (6)  The carrying of an unloaded firearm in an opaque locked or enclosed case that must be recognizable as a gun carrying case by a reasonable person. A plain-shaped case must be clearly marked to be deemed recognizable under this standard. A holster satisfies the requirement of a carrying case for a pistol.

   (7)  The carrying of a concealed handgun by a person with a valid permit to carry issued or recognized pursuant to Title 18, Article 12, Part 2 of the Colorado Revised Statutes, or the otherwise lawful use of a handgun by a person with a valid permit to carry.

   (8)  Private security guards acting in the course and scope of their duties.

(c)  As is used in this section:

   (1)  "Public place" means a place to which the public or a substantial number of the public has access, except for premises where firearms are lawfully sold or repaired.

Ordinance No. 8527 (2022)

**Editor's note—** Ord. No. 8527 , § 1, effective July 7, 2022, repealed the former § 5-8-21, and enacted a new § 5-8-21 as set out herein. The former § 5-8-21 pertained to open carriage of firearms in carrying cases required and derived from Ordinance No. 8245 (2018) .

5-8-22. - Defenses.

(a) It is an affirmative defense to a charge of violating Sections 5-8-3, "Discharge of Firearms," 5-8-4, "Possessing and Discharging Firearm or Bow in Park or Open Space," 5-8-5, "Negligently Shooting Bow or Slingshot," 5-8-6, "Aiming Weapon at Another," 5-8-7, "Flourishing Deadly Weapon in Alarming Manner," and 5-8-8, "Possession of Loaded Firearms," B.R.C. 1981, that the defendant was:

(1) Reasonably engaged in lawful self-defense under the statutes of the State of Colorado; or

(2) Reasonably exercising the right to keep and bear arms in defense of the defendant's or another's home, person and property or in aid of the civil power when legally thereto summoned.

(b) It is a specific defense to a charge of violating Sections 5-8-3, "Discharge of Firearms," 5-8-4, "Possessing and Discharging Firearm or Bow in Park or Open Space," and 5-8-8, "Possession of Loaded Firearms," B.R.C. 1981, that the events occurred in an area designated as a target range by the city manager under Section 5-8-26, "City Manager May Designate Target Ranges," B.R.C. 1981, for the type of weapon involved. It is a specific defense to a charge of violating Section 5-8-4, "Possessing and Discharging Firearm or Bow in Park or Open Space," B.R.C. 1981, by possession that the defendant was going directly to or returning directly from such a target range.

(c) It is an affirmative defense to a charge of violating Sections 5-8-8, "Possession of Loaded Firearms," 5-8-9, "Carrying a Concealed Weapon," and 5-8-11, "Possessing Firearm While Intoxicated," B.R.C. 1981, that the defendant was:

(1) In the defendant's own dwelling or place of business or on property owned or under the defendant's control at the time; or

(2) In a private automobile or other private means of conveyance at the time and was carrying the weapon for lawful protection of the defendant's or another's person or property while traveling; or

(3) Charged with carrying a knife that was a hunting or fishing knife carried by the defendant for sport use.

(d) It is a specific defense to a charge of violating Sections 5-8-8, "Possession of Loaded Firearms," and 5-8-9, "Carrying a Concealed Weapon," B.R.C. 1981, that the defendant was carrying the weapon pursuant to a concealed weapons permit valid under the statutes of the State of Colorado.

(e) It is a specific defense to a charge of violating Sections 5-8-3, "Discharge of Firearms," and 5-8-8, "Possession of Loaded Firearms," B.R.C. 1981, that the loaded gas or mechanically operated gun was possessed or discharged in a building with the permission of the property owner and the projectile did not leave the building.

(f) It is a specific defense to a charge of violating Section 5-8-10, "Possession of Illegal Weapons," B.R.C. 1981:

(1) That the person had a valid permit for such weapon pursuant to federal law at the time of the offense; or

(2) That the illegal weapon was an assault weapon accompanied by a certificate of ownership, issued under Section 5-8-28(i), or previously issued prior to December 31, 2018, by the Boulder Police Department.

(g) It is a specific defense to a charge of violating Section 5-8-4, "Possessing and Discharging Firearm or Bow in Park or Open Space," B.R.C. 1981, that the firearm, gas or mechanically operated gun, bow, slingshot or crossbow possessed by the person was being transported in a motor vehicle. This defense does not apply to a charge of violation involving discharge of a missile.

(h) It is an affirmative defense to any charge of a violation of this chapter relating to carrying firearms that the defendant was carrying the firearm in a private automobile or other private means of conveyance for hunting while traveling in, into or through the city, as permitted by § 18-12-105.6, C.R.S.

Ordinance Nos. 5497 (1992); 8245 (2018) ; 8494 (2022)

**State Law reference—** § 18-12-105(2)(b), C.R.S.

5-8-23. - Seizure of Weapons.

Any peace officer who has probable cause to believe that a violation of this chapter has occurred may, in addition to taking any other action, seize the weapons or items used in said violation. Any weapon or items so seized shall be secured by the peace officer in accordance with the rules of the chief of police.

5-8-24. - Forfeiture and Disposition of Deadly Weapons.

After final conviction, every person convicted of any violation of any provision of this code, another ordinance of the city or a state statute involving a deadly weapon shall forfeit to the city the weapon involved. After conviction, it shall be the duty of the chief of police to dispose of the weapon or item, as the chief deems appropriate.

5-8-25. - Exemptions from Chapter.

Nothing in this chapter shall be construed to forbid the following persons from having in their possession, displaying, concealing or discharging such weapons as are necessary in the authorized and proper performance of their official duties:

    (a)  United States Marshals, any sheriffs, constables, and their deputies.

    (b)  Any regular or ex officio police officer.

    (c)  Any government agent, officer, or employee, any other peace officer, or members of the United States Armed Forces, Colorado National Guard or Reserve Officer Training Corps acting in the course and scope of their duties.

Ordinance Nos. 5462 (1992); 8245 (2018) ; 8259 (2018); 8494 (2022)

5-8-26. - City Manager May Designate Target Ranges.

    (a)  The city manager may designate and establish areas within any property owned by the city as target ranges.

    (b)  The city manager shall issue a permit for a private or commercial target range upon application therefor, if the manager finds that:

        (1)  The range is so located and constructed as to protect the health and safety of range users and residents of the city;

        (2)  Use of the range will not violate Chapter 5-9, "Noise," B.R.C. 1981; and

        (3)  Operation of the range will not violate any provision of this code or an ordinance of the city or state or federal law.

    (c)  The city manager may adopt reasonable regulations to implement the provisions of subsection (b) of this section and prescribe the form and content of the permit application.

    (d)  Permits issued under subsection (b) of this section are valid for five years, if issued to the owner of the land upon which the range is located, or for the period of the lease or permission to use the land, if issued to any other person, but for no more than five years.

    (e)  The city manager may revoke a permit issued under subsection (b) of this section if the target range under the

permit ceases to meet the requirements of that subsection. Before revoking a permit issued under this section, the manager shall afford the permittee an opportunity for a hearing under the procedures prescribed by Chapter 1-3, "Quasi-Judicial Hearings," B.R.C. 1981.

5-8-27. - Firearms Dealers; Display of Weapons.

No secondhand dealer, pawnbroker or any other person engaged in the wholesale or retail sale, rental or exchange of any firearms shall display or place on exhibition any firearm in any show window or other window facing upon any street of the city.

Ordinance No. 7299 (2003)

5-8-28. - Assault Weapons.

(a) Any person who, prior to July 1, 2022, was legally in possession of an assault weapon or large capacity magazine shall have until December 31, 2022 to obtain a certificate for the assault weapon as provided in subsection (c) of this section.

(b) Any person who, prior to July 1, 2022, was legally in possession of a rapid-fire trigger activator shall have until August 1, 2022 to do any of the following without being subject to prosecution:

(1) Remove the rapid-fire trigger activator from the City of Boulder; or

(2) Surrender the rapid-fire trigger activator to the Boulder Police Department for destruction.

(c) Any person seeking to certify an assault weapon that he or she legally possessed prior to July 1, 2022, unless they obtained a certificate of ownership prior to December 31, 2018, must comply with the following requirements:

(1) Submit to a background check conducted by the appropriate law enforcement agency to confirm that he or she is not prohibited from possessing a firearm pursuant to 18 U.S.C. § 922 or C.R.S § 18-12-108; and

(2) Unless the person is currently prohibited by law from possessing a firearm, prior to December 31, 2022 apply for a certificate for the assault weapon from the Boulder Police Department.

(d) All persons who hold a certificate issued prior to December 31, 2018 or who obtain a certificate pursuant to subsection (i) of this section shall:

(1) Safely and securely store the assault weapon pursuant to the regulations adopted by the appropriate law enforcement agency;

(2) Possess the assault weapon only on property owned or immediately controlled by the person, or while on the premises of a licensed gunsmith for the purpose of lawful repair, or while engaged in the legal use of the assault weapon at a duly licensed firing range, or while traveling to or from these locations, provided that the assault weapon is stored unloaded in a locked container during transport. The term "locked container" does not include the utility compartment, glove compartment, or trunk of a motor vehicle; and

(3) Report the loss or theft of a certified assault weapon to the appropriate law enforcement agency within 48 hours of the time the discovery was made or should have been made.

(e) If a certified assault weapon is used in the commission of a crime, the owner shall be civilly liable for any damages resulting from that crime. The liability imposed by this subsection shall not apply if the assault weapon was stolen and the certified owner reported the theft of the firearm to law enforcement within 48

hours of the time the discovery was made or should have been made.

(f) Certified assault weapons may not be purchased, sold or transferred in the City of Boulder, except for transfer to a licensed gunsmith for the purpose of lawful repair, or transfer to the appropriate law enforcement agency for the purpose of surrendering the assault weapon for destruction.

(g) Persons acquiring an assault weapon by inheritance, bequest, or succession shall, within 90 days of acquiring title, do one of the following:

(1) Modify the assault weapon to render it permanently inoperable;

(2) Surrender the assault weapon to the Boulder Police Department for destruction;

(3) Transfer the assault weapon to a firearms dealer who is properly licensed under federal, state and local laws; or

(4) Permanently remove the assault weapon from the City of Boulder.

(h) The owner of a certified assault weapon may not possess in the City of Boulder any assault weapons purchased on or after July 1, 2022.

(i) The city manager shall charge a fee for each certificate sufficient to cover the costs of administering the certificate program. The city manager shall issue to qualified applicants two original copies of each certificate issued. The City of Boulder shall not maintain any records of certificates issued. The person who received the certificate shall keep one copy with the weapon certified and the second copy in a secure place to replace the certificate maintained with the weapon.

Ordinance Nos. 7299 (2003); 8245 (2018) ; 8259 (2018); 8494 (2022)


5-8-29. - Application for Permits and Fees.

Repealed.

Ordinance No. 7299 (2003)


5-8-30. - Investigation, Approval and Issuance of Permits.

Repealed.

Ordinance No. 7299 (2003)


5-8-31. - Term of Permit, Renewal Procedures.

Repealed.

Ordinance No. 7299 (2003)


5-8-32. - Change of Firearms, Address or Employment.

Repealed.

Ordinance No. 7299 (2003)


5-8-33. - Permit Not Transferable.

Repealed.

Ordinance No. 7299 (2003)

5-8-34. - Exhibition of Permit.

Repealed.

Ordinance No. 7299 (2003)

5-8-35. - Revocation and Suspension of Permits.

Repealed.

Ordinance No. 7299 (2003)

5-8-36. - Surrender of Permit.

Repealed.

Ordinance No. 7299 (2003)

5-8-37. - No City Liability for Issuing Permit.

Repealed.

Ordinance No. 7299 (2003)

5-8-38. - State Preemption.

It is an affirmative defense to any charge of a violation of this chapter relating to carrying firearms that the defendant was carrying the firearm in a private automobile or other private means of conveyance for lawful protection of such person's or another's person or property or for hunting while traveling in, into or through the city, as permitted by § 18-12-105.6, C.R.S.

Ordinance Nos. 7134 (2001); 7299 (2003)

5-8-39. - Prohibitions.

    (a)  Except as provided in subsection (c), it shall be a civil offense for any person to possess any firearm that has not been identified with a serial number by a federal licensee.

    (b)  A violation of subsection (a) that includes a finding that the person possessed one or more firearms, which have not been identified with a serial number by a federal licensee, with an intent to sell or distribute the firearms unlawfully is a criminal offense.

    (c)  Subsection (a) shall not apply to:

        (1)  A federal licensee;

        (2)  Any firearm made before October 22, 1968 (unless remanufactured after that date); or

(3)  A local, state, or federal law enforcement officer who possesses a firearm pursuant to their official duties.

Ordinance No. 8526 (2022)

5-8-40. - Disclosure.

(a)  At any site where firearm sales or transfers are conducted in the City of Boulder, a licensed firearms dealer shall conspicuously display a sign containing the information set forth in subsection (b) in any area where the sales or transfers occur.

Such signs shall be posted in a manner so that they can be easily viewed by persons to whom firearms are sold or transferred, and shall not be removed, obscured, or rendered illegible. If the site where the sales or transfers occur are the premises listed on the licensed firearms dealer's federal license(s), an additional such sign shall be placed at or near the entrance.

(b)  Each informational sign shall be at least eight and one-half inches high by eleven inches wide and feature black text against a white background and letters that are at least one-half inch high. The signs shall not contain other statements or markings other than the following text in English and Spanish:

WARNING: Access to a firearm in the home significantly increases the risk of suicide, death during domestic violence disputes, and the unintentional death of children, household members, or others. If you or a loved one is experiencing distress and/or depression, call 1-844-493-8255. Posted pursuant to Section 5-8-40, B.R.C. 1981.

(c)  The City of Boulder shall make available a downloadable sign as described in subsection (b) of this section in English and Spanish and make such sign available on the City's website.

(d)  The Boulder Police Department is authorized to enforce this chapter consistent with subsection (e) of this section.

(e)  When violations of this section occur, a warning shall first be given to the licensed firearms dealer or other person in charge of the site. Any subsequent violation is subject to a fine of up to five hundred dollars ($500). Each day upon which a violation occurs or is permitted to continue constitutes a separate violation.

Ordinance No. 8528 (2022)

5-8-41. - Waiting Period Prior to Firearm Purchase.

No licensed firearms dealer shall deliver a firearm, and no person shall take possession of a firearm from a licensed dealer, until both of the following have occurred:

(a)  Ten days have elapsed from the date the dealer initiated the Colorado Bureau of Investigation check of the purchaser pursuant to § 24-33.5-424, C.R.S.; and

(b)  The dealer has received approval for the firearms transfer as required by § 18-12-112.5, C.R.S.

(c)  Exceptions. This section does not apply to:

(1)  Any law enforcement or corrections agency, or law enforcement or corrections officer acting within the course and scope of his or her employment or official duties;

(2)  A United States Marshal or member of the Armed Forces of the United States or the National Guard, or a federal official transferring firearms as required in the operation of his or her official duties;

(3)  Licensed firearms manufacturers, importers or dealers, while engaged in the course and scope of their

activities as licensees, provided that the transfers are between licensees and all such licensees are properly licensed under federal, state and local law;

(4)   A gunsmith who receives a firearm for service or repair;

(5)   A properly licensed private security firm, or private security personnel, who acquires the firearms for use in the course and scope of employment; or

(6)   A common carrier, warehouseman, or other person engaged in the business of transporting or storing goods, to the extent that the possession or receipt of any firearm or having on or about the person of any firearm, is in the ordinary course of business and not for the personal use of any such person.

Ordinance No. 8529 (2022)

5-8-42. - Severability.

If any section, subsection, sentence or clause of this chapter is for any reason declared unconstitutional or invalid or unenforceable by any court of competent jurisdiction, such decision shall not affect the constitutionality, validity or enforceability of the remaining portions of this chapter or any part thereof. The City Council hereby declares that it would have adopted this chapter notwithstanding the unconstitutionality, invalidity or unenforceability of any one or more of its sections, subsections, sentences or clauses.

Ordinance No. 8494 (2022)