IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02113-CNS-MEH

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS, and
MARTIN CARTER KEHOE,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

    Defendant.

## PLAINTIFFS' MOTION FOR

## TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION

Plaintiffs submit the following Motion for Temporary Restraining Order and for Preliminary Injunction against Defendant Board of County Commissioners of Boulder County (the "County")

**Certification**: The summons and complaint in this matter were served on the defendants on August 22, 2022. On August 25, 2022, the undersigned spoke to David Hughes, counsel of record for Defendant, about this motion. Defendant opposes this motion for preliminary injunction but does not at this time take a position on the motion for TRO.

### I. INTRODUCTION

This action challenges the constitutionality of certain provisions of the County's Ordinance No. 2022-5 (the "Ordinance").[1] The Ordinance bans (1) certain semi-automatic

---

[1] A copy of the relevant portion of the Ordinance is attached to the Complaint as Exhibit A.

1

firearms that are held by millions of law-abiding American citizens for lawful purposes; and (2) certain firearm magazines that are held by millions of law-abiding American citizens for lawful purposes. The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *D.C. v. Heller*, 554 U.S. 570, 627 (2008). Thus, these provisions of the Ordinance are unconstitutional.

Accordingly, Plaintiffs hereby move the Court to enter a Temporary Restraining Order restraining the City from enforcing these unconstitutional provisions of the Ordinance. Moreover, Plaintiffs move the Court to enter a preliminary injunction to enjoin the unconstitutional provisions of the Ordinance.

## II. FACTS

1. Section 1(a) of the Ordinance defines the terms "assault weapon."

2. The term "assault weapon" as used in the Ordinance is not a technical term used in the firearms community for firearms commonly available to civilians. Brown Dec. ¶ 5. Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by millions of law-abiding American citizens for lawful purposes. Brown Dec. ¶ 5. Plaintiffs refuse to adopt the City's politically charged rhetoric. Therefore, for purposes of this Motion, the term "Banned Firearm" shall have the same meaning as the term "assault weapon" in section 5-8-2of the Ordinance.

3. Section 2(a) of the Ordinance makes it illegal to manufacture, import, purchase, sell or transfer any Banned Firearm in unincorporated part of the County.

4. Plaintiffs and/or their members currently own and possess Banned Firearms. Kehoe Dec. ¶ 3; Brown Dec. ¶ 7. Plaintiffs and/or their members desire to continue to possess

the Banned Firearms in the unincorporated part of the County. *Id*. Moreover, they wish to acquire more Banned Firearms, transfer their currently owned Banned Firearms to other persons in the unincorporated part of the County, and bequeath their Banned Firearms to their devisees. *Id*.

5. Section 1(c) of the Ordinance defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition.

6. The Ordinance again uses politically charged rhetoric to describe the arms it bans. Brown Dec. ¶ 5. The Ordinance's characterization of these magazines as "large capacity" is a misnomer, because magazines capable of holding more than 10 rounds are standard capacity magazines. *Id*. Plaintiffs again refuse to adopt the City's politically charged rhetoric. Therefore, for purposes of this Motion, the term "Banned Magazine" shall have the same meaning as the term "large-capacity magazine" in section 5-8-2 of the Ordinance.

7. Section 2(a) of the Ordinance makes it illegal to manufacture, import, purchase, sell or transfer any Banned Magazine in unincorporated part of the County.

8. Plaintiffs and/or their members wish to continue to possess, use and transfer Banned Magazines without fear of criminal prosecution. Kehoe Dec. ¶ 4; Brown Dec. ¶ 8

9. At least 20 million semi-automatic firearms such as those defined as "assault weapons" in the Ordinance are owned by millions of American citizens who use those firearms for lawful purposes. Declaration of James Curcuruto ¶ 6. Mr. Curcuruto's declaration was originally submitted in *Rocky Mountain Gun Owners, et al. v. Town of Superior*, 22-CV-1685-RM. It is used with permission in this action.

10.     At least 150 million magazines with a capacity greater than ten rounds are owned by law-abiding American citizens, who use those magazines for lawful purposes. Declaration of James Curcuruto ¶ 7.

### III.  ARGUMENT

**A.     Standard for Granting Temporary Restraining Order and Preliminary Injunction**

**1.     TRO**

A party seeking a TRO must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). A showing of probable irreparable harm is the single most important prerequisite for the issuance of a TRO; therefore, the moving party must first demonstrate that such injury is likely before the other requirements will be considered. *A.K. by & through Moyer v. Cherry Creek Sch. Dist. No. 5*, 2020 WL 2197920, at *2 (D. Colo. 2020), *quoting, First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017).

In this case all of the elements for issuance of a TRO are present. As discussed in detail below, Plaintiffs will suffer irreparable harm to their constitutional rights if the unconstitutional provisions of the Ordinance are enforced. The loss of constitutional freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir.2003) (citation omitted). The third and fourth factors identified in *Roda Drilling*, *supra*, also weigh in favor of Plaintiffs. When a law is likely unconstitutional, the government's interest in enforcing the law does not outweigh that of

individuals in securing the protection of their constitutional rights. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id*. at 1132. Plaintiffs have attached a form of TRO.

### 2. Preliminary Injunction

To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

It is well-settled that a showing of the infringement of a constitutional right is enough and requires no further showing of irreparable injury. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 805 (10th Cir. 2019). In the context of constitutional claims, this principle collapses the first and second preliminary-injunction factors. *Id*., at 806. The third and fourth factors also merge when the government is the opposing party. *Aposhian v. Barr*, 958 F.3d 969, 978, *citing Nken v. Holder*, 556 U.S. 418, 435 (2009).

In a constitutional case, the likelihood of success on the merits will often be the determinative factor. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682 (2014). This is because: (a) the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury; (b) when a law is likely unconstitutional, the government's interests do not outweigh a plaintiff's interests in having his constitutional rights protected; and (c) it is always in the public interest to prevent violation of a person's constitutional rights. *Id*. Indeed, in constitutional cases whether to grant the injunction often

turns on likelihood of success on the merits only, usually making it unnecessary to dwell on the remaining factors. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (*en banc*) (*per curiam*).

### III. ARGUMENT

The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II. The Second Amendment guarantees the right of individuals to keep and bear arms. *Heller*, *supra*. The constitutional guarantee applies to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). In *Bruen*, *supra*, the Court elucidated the framework for judicial review of legislative burdens on the right to bear arms.

The Ordinance flatly prohibits any person in the City from acquiring after the effective date of the ban an additional Banned Firearm for any reason. The Ordinance makes it illegal to possess, sell or otherwise transfer any Banned Magazine.

The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *Heller*, *supra*, at 627. This issue was addressed by Judge Traxler in his dissent in *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), abrogated by *Bruen*, *supra*. Plaintiffs will focus on the *Kolbe* dissent because in *Bruen* the Court rejected the balancing test adopted by the majority in that case and adopted the text and history test advocated by Judge Traxler in his dissent. Thus, the analysis in the dissent almost certainly represents the correct interpretation of the law. With respect to weapons such as the Banned Firearms, Judge Traxler stated:

> It is beyond any reasonable dispute from the record before us that a statistically significant number of American citizens possess semiautomatic rifles (and magazines holding more than 10 rounds) for lawful purposes. Between 1990 and

> 2012, more than 8 million AR- and AK- platform semiautomatic rifles alone were manufactured in or imported into the United States. In 2012, semiautomatic sporting rifles accounted for twenty percent of all retail firearms sales. In fact, in 2012, the number of AR- and AK- style weapons manufactured and imported into the United States was more than double the number of the most commonly sold vehicle in the U.S., the Ford F-150. In terms of absolute numbers, these statistics lead to the unavoidable conclusion that popular semiautomatic rifles such as the AR-15 are commonly possessed by American citizens for lawful purposes within the meaning of *Heller*.

*Id.*, 849 F.3d at 153, Traxler, J. dissenting (internal citations and quotation marks omitted).

Judge Traxler also addressed magazines such as the Banned Magazines. He stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States. These magazines are so common that they are standard on many firearms: On a nationwide basis most pistols are manufactured with magazines holding ten to 17 rounds. Even more than 20 years ago, fully 18 percent of all firearms owned by civilians were equipped with magazines holding more than ten rounds."

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

Based on these undisputed facts, Judge Traxler concluded:

> Millions of Americans keep semiautomatic rifles and use them for lawful, non-criminal activities, including as a means to defend their homes. Plaintiffs Kolbe and Turner both seek to acquire and keep semi-automatic rifles, equipped with magazines able to hold more than 10 rounds, in their homes primarily for self-defense – a common and legitimate purpose for possessing these firearms. . . . **Because the evidence before us clearly demonstrates that these popular weapons are commonly possessed for lawful purposes and are therefore not dangerous and unusual, they are covered by the Second Amendment**.

*Id.*, 849 F.3d at 154–55, Traxler, J. dissenting (emphasis added).

At least 20 million semi-automatic firearms such as those defined as "assault weapons" in the Ordinance are owned by millions of American citizens, who use those firearms for lawful purposes. Declaration of James Curcuruto ¶ 6.[2]

The Ordinance's prohibition on the possession, sale, or other transfer of the Banned Firearms possessed by Plaintiffs and/or their members violates the Second Amendment. Moreover, the Ordinance's prohibition on publicly carrying even grandfathered Banned Firearms violates the Second Amendment. *Bruen*, *supra*.

At least 150 million magazines with a capacity greater than ten rounds are owned by law-abiding American citizens, who use those magazines for lawful purposes. Declaration of James Curcuruto ¶ 7. The Ordinance's prohibition on the possession, sale, or other transfer of the Banned Magazines owned by Plaintiffs and/or their members violates the Second Amendment.

The Ordinance provisions challenged in this action are practically identical to the ordinance made subject to a restraining order by this Court last month. See Temporary Restraining Order issued on July 23, 2022, in *Rocky Mountain Gun Owners, et al. v. Town of Superior*, 22-CV-1685-RM. For the reasons set forth in Judge Moore's well-reasoned opinion in that matter, a TRO should also be issued in this action.

Plaintiffs are or will be injured by Defendants' enforcement of the Ordinance sections identified above insofar as those provisions violate Plaintiffs' rights under the Second

---

[2] Mr. Curcuruto has extensive expertise regarding these issues and has testified in key cases around the country. See e.g., *Duncan v. Becerra*, 970 F.3d 1133, 1143 (9th Cir. 2020),reh'g en banc granted, opinion vacated, 988 F.3d 1209 (9th Cir. 2021), and on reh'g en banc *sub nom.Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), cert. granted, judgment vacated, 2022 WL 2347579 (U.S. June 30, 2022) (Curcuruto report central to district court's analysis); and *Kolbe, supra*, Traxler, J. dissenting (relying on Mr. Curcuruto's testimony).

Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes." If not enjoined by this Court, Defendants will enforce the Ordinance in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

Accordingly, Plaintiffs move the Court immediately to enter a preliminary restraining order and to set this matter for consideration of their motion for preliminary injunction at the earliest time reasonably available to the Court and the parties.

## REQUEST FOR HEARING

Plaintiffs request a hearing on their motion for preliminary injunction.

Respectfully submitted this 25th day of August 2022.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
Voice:  (303) 205-7870; Fax:  (303) 463-0410
Email:  barry@arringtonpc.com

Shaun Pearman
Eric Apjoke
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
Phone Number:  (303) 991-7600
Fax Number:  (303) 991-7601
E-mail:  shaun@pearmanlawfirm.com
Email: eric@pearmanlawfirm.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on August 25, 2022, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email counsel of record:

*/s/ Barry K. Arrington*
_____
Barry K. Arrington